Zimmekmait, J.
In June of 1955, the commission, on its own motion (Section 4905.26, Revised Code), instituted a proceeding whereby the two telephone companies above mentioned were cited to show cause why they should not be required to provide reciprocal extended-area service between their respective Congress and Wooster exchanges, both exchanges being located in Wayne County, Ohio, some 13 miles apart.
Northern Ohio in its answer expresses its willingness to inaugurate such service under specified conditions, hut appellant, in its answer, objects for several stated reasons, including the claim that there is not a sufficient community of interest between the localities involved to warrant such an arrangement.
“Extended-area service” in relation to separate telephone companies may be defined as that type of service in which a subscriber of one telephone exchange may call a subscriber of another exchange without being required to pay a separate charge therefor.
Although this type of service is not altogether new, it is becoming more and more prevalent to meet the needs, requirements and convenience of the changing and expanding conditions of present-day activities and living. Increasingly, telephone subscribers wish and demand it.
At the hearing before the commission, a number of witnesses testified and a number of exhibits were introduced. From an examination of the record, it appears that there is a considerable interchange of communications between the two exchanges, involving professional, business, emergency and social matters. The great majority of people residing in the Congress area transact their business in the city of Wooster, which is the county seat and the largest municipality of Wayne County. There was testimony on the part of several witnesses that extended-area service, free from toll charges, is necessary and *182 expedient for communicating with physicians, veterinarians, artificial inseminators, farm implement dealers, fire-fighting organizations and county officials.
A May 1953 survey and study made of its toll traffic by Northern Ohio disclosed that in that month 152 of its subscribers made 710 toll calls from its Congress exchange to appellant’s Wooster exchange, and the same type of survey and study made by appellant at another time showed an average of 20 calls per day from its Wooster exchange to the Congress exchange.
Notwithstanding that appellant’s Wooster exchange has approximately 9,700 subscribers and Northern Ohio’s Congress exchange has but about 200, it would seem apparent that the number of toll calls from the Congress exchange to the Wooster exchange and vice versa are not radically disproportionate.
It is not altogether clear from the record as to the exact cost of establishing the extended-area service ordered by the commission. However, it is plain that such cost would not be exhorbitant or prohibitive. It would involve an application and allocation of facilities and an actual all-round expenditure in a sum less than $12,000.
Public utilities, including telephone companies, unlike many other businesses, must serve public convenience and necessity and are not a law unto themselves. A principal purpose of the creation of the Public Utilities Commission was to use it as a means to secure for the public adequate and efficient service from utilities at a fair and reasonable cost. However, being an administrative body, the commission may exercise only the powers and authority which have been conferred upon it by the G-en-eral Assembly.
Section 4905.22, Revised Code, provides:
“Every public utility shall furnish necessary and adequate service and facilities, and every public utility shall furnish and provide with respect to its business such instrumentalities and facilities, as are adequate and in all respects just and reasonable. All charges made or demanded for any service rendered, or to be rendered, shall be just, reasonable, and not more than the charges allowed by law or by order of the Public Utilities *183 Commission, and no unjust or unreasonable charge shall be made or demanded for, or in connection with, any service, or in excess of that allowed by law or by order of the commission. 5 ’
Although appellant argues to the contrary, it is our opinion that the quoted section empowers the commission to inquire into and order extended-area telephone service, where public convenience and necessity demand it (compare Section 4905.38, Bevised Code) and where, in the light of existing conditions and requirements, such an order is not unreasonable or unlawful.
Further contesting the order in issue, appellant cites and relies on Section 4905.49, Bevised Code, which in part recites:
“No consolidation, purchase, lease, or contract by which two or more telephone companies merge or operate their lines or plants jointly or in connection with each other, shall become valid or effective until after the commission has ascertained and determined the valuation, as provided in such chapters upon which the rates, tolls, charges, and rentals are based and has fixed and determined such rates, tolls, charges, and rentals to be so charged. ’ ’
As we read that and other related sections, they have reference to a voluntary union or association of telephone companies, wherein by agreement between or among them they join their facilities in rendering a combined service, and such section is not contemplative of a situation such as confronts us here, where two separate companies are ordered by the commission to join their facilities in the public interest.
Naturally, those telephone subscribers benefited and accommodated by extended-area service will, in all probability, have to pay for it in the form of increased rates. That problem is one for the future, and we think there is abundant statutory authority to enable the commission to establish new rates which will be fair and reasonable as to the benefited subscribers of each telephone company and which will, at the same time, insure each company fair treatment, as between themselves, and a fair return to each based on all the factors which should and must be taken into account in arriving at such a result. See Sections 4905.50 and 4905.51, Bevised Code.
*184 Appellant asserts that the commission predicated its extended-area service order upon evidence improperly received and considered. We have examined the record and are convinced that there was ample competent evidence before the commission to support and justify its order to meet existing needs and demands in the territory involved. See Chesapeake & Ohio Ry. Co. v. Public Utilities Commission, 163 Ohio St., 252, 126 N. E., (2d), 314.
For the reasons stated, the initial order of the commission requiring the two telephone companies to inaugurate extended-area service between their respective Congress and Wooster exchanges is affirmed.

Order affirmed.

WeygaNdt, C. J., Stewart, Bell, Tapt, Matthias and Herbert, JJ., concur.